An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1014

Filed 1 July 2026

Pitt County, Nos. 22CR339184-730, 23CR000882-730

STATE OF NORTH CAROLINA

v.

JARMARLON HARRIS

Appeal by defendant from judgment entered 1 August 2024 by Judge Marvin K. Blount, III, in Pitt County Superior Court. Heard in the Court of Appeals 2 June 2026.

>*Attorney General Jeff Jackson, by Special Deputy Attorney General Stacey A. Phipps, for the State.*

>*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for defendant-appellant.*

ZACHARY, Judge.

Defendant Jarmarlon Harris appeals from the trial court's judgment entered upon a jury's verdicts finding him guilty of extortion, conspiracy to commit extortion, and attaining habitual-felon status. On appeal, Defendant argues that the court erred by denying his motion to dismiss the extortion and conspiracy charges. Defendant contends that, therefore, this Court should vacate these convictions as well as his

conviction for attaining habitual-felon status. After careful review, we conclude that the trial court did not err.

**I.  Background**

Defendant's case came on for jury trial on 31 July 2024. The evidence tended to show the following:

Christopher McLawhorn is a fencing and deck contractor. On 7 November 2022, while McLawhorn was at a job site, his secretary alerted him that someone who had arrived in a Dodge Charger was "beating on the front door of [the] office," wanting to speak to him. McLawhorn's secretary refused to open the door. McLawhorn called his landlord, who informed the person that McLawhorn was not present. The man then departed.

"[T]hroughout that day and the next day," McLawhorn "kept getting phone calls from a number [he] didn't recognize." The caller told McLawhorn that he "had video evidence of [McLawhorn] with an underage girl and [he was] going to tell [McLawhorn's] wife and . . . kids."[1] During these calls, which McLawhorn recorded, he "was speaking to one main person" but could occasionally "hear someone [else] in the background." He was told: "We are both in charge."

The caller also sent McLawhorn text messages from the same phone number containing, *inter alia*, threats and a photograph of "a handwritten letter" that

---

[1] McLawhorn was divorced at the time of this incident.

included McLawhorn's name, his girlfriend's name, his daughter's name, the name and address of his business, his personal address, a prior personal address, and his phone number. The letter was allegedly written by "Destiny's father" and asserted that Destiny "was underage." The letter also claimed that the sender had "video evidence" and threatened "to go to the police, the media, [and McLawhorn's] family" if McLawhorn refused to pay the sender. Screenshots of the text messages, including the letter, were admitted into evidence at trial and published to the jury as State's Exhibit 2.

McLawhorn testified that he met a woman named Destiny Plotzke at a strip club and that they engaged in sex. Plotzke denied to a law enforcement officer that she had sex with McLawhorn.

The harassment continued, with "nonstop calls and texts," sometimes at "1:00, 2:00, 3:00 in the morning." Additionally, two men "show[ed] up at a place [McLawhorn] was eating dinner one night"; Defendant was one of the men.

McLawhorn then contacted the Greenville Police Department. In cooperation with law enforcement officers, McLawhorn told the callers that he would pay the demanded amount and arranged a meeting for 9 November at the parking lot of a local grocery store to make the extorted payment. Officers arrested the three men who arrived to collect payment from McLawhorn, one of whom was Defendant.

Officers seized a cell phone from each of the arrested men. From Defendant, the officers seized a cell phone with a floral cover belonging to Defendant's ex-

girlfriend's daughter, from whom he had borrowed the cell phone for a week. This cell phone's call log reflected numerous calls to McLawhorn's cell phone number from 7–9 November. The call log was admitted into evidence at trial and published to the jury as State's Exhibit 5. In addition, the cell phone had a "Text Now" app that could be used to spoof a cell phone number. The number generated by the app was the same number from which McLawhorn had repeatedly received calls and text messages.

Detective Cameron Donaldson of the Greenville Police Department interviewed Defendant, who acknowledged that he "was aware of [the] texts and phone calls" that McLawhorn received and "was well aware of a letter which had been sent to [McLawhorn] demanding money, essentially blackmailing him or demanding money in exchange for not doing – not releasing images." A recording of this interview was admitted into evidence at trial as State's Exhibit 1 and published to the jury.

Joyce Parker, Defendant's ex-girlfriend, testified that she had driven Defendant in her Dodge Charger to a fencing company prior to his arrest. Recordings of phone calls between McLawhorn and the men setting up the meeting time and "negotiating the money" were admitted into evidence at trial as State's Exhibits 3 and 4 and published to the jury.

Defense counsel moved to dismiss the extortion and conspiracy charges "due to [the] insufficiency of the evidence" at the close of the State's evidence and renewed the motion at the close of all evidence; the trial court denied the motion on both occasions.

On 1 August 2024, the jury returned its verdicts finding Defendant guilty of extortion, conspiracy to commit extortion, and attaining habitual-felon status. That same day, the trial court entered judgment, consolidating Defendant's convictions and sentencing him to 77 to 105 months' imprisonment in the custody of the North Carolina Department of Adult Correction.

Defendant gave timely notice of appeal.

## II.   Discussion

Defendant argues that "[t]he trial court erred by denying the motion to dismiss the offenses of extortion and conspiracy to commit extortion." Accordingly, he contends that this Court should vacate the convictions for these charges as well as the conviction for attaining habitual-felon status. We disagree.

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss de novo. Under a de novo review, this Court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Fraley*, 299 N.C. App. 463, 469, 918 S.E.2d 910, 915 (2025) (extraneity removed).

When reviewing the trial court's denial of a motion to dismiss, "the question is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied." *Id.* (extraneity removed). "Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *State v. Sharpe*, 289 N.C. App. 84, 87, 887 S.E.2d 116, 119 (2023) (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *Id.* (citation omitted). "[I]f the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Fraley*, 299 N.C. App. at 469, 918 S.E.2d at 916 (extraneity removed).

**B. Extortion**

Defendant first argues that "[t]he trial court erred by denying the motion to dismiss when there was insufficient evidence that [he], either by himself or by acting in concert with another, committed the offense of extortion."

"[A] person is guilty of extortion if that person threatens or communicates a threat or threats to another with the intention thereby wrongfully to obtain anything of value or any acquittance, advantage, or immunity." *State v. Wright*, 240 N.C. App. 270, 273, 770 S.E.2d 757, 759 (extraneity removed), *disc. review denied*, 368 N.C. 284, 775 S.E.2d 858 (2015); *see* N.C. Gen. Stat. § 14-118.4 (2025). "Extortion may be defined as wrongfully obtaining anything of value from another by threat, duress, or coercion." *State v. Privette*, 218 N.C. App. 459, 474, 721 S.E.2d 299, 310 (citation

omitted), *disc. review denied sub nom.*, *State v. Smith*, 365 N.C. 566, 724 S.E.2d 532 (2012).

"[A] defendant is said to have acted in concert with another if he acted together, in harmony or in conjunction with another pursuant to a common plan or purpose." *State v. Christian*, 288 N.C. App. 50, 54, 884 S.E.2d 492, 497 (extraneity removed), *disc. review denied*, 385 N.C. 315, 891 S.E.2d 267 (2023). When "two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of" the common plan or purpose "or as a natural or probable consequence thereof." *Id.* (citation omitted).

Here, the State presented substantial evidence from which the jury could reasonably infer that Defendant acted in concert with another to extort money from McLawhorn. At trial, McLawhorn testified that during the phone calls, he could hear another man in the background, and was told, "We are both in charge"; a recording of this conversation was admitted into evidence as State's Exhibit 3 and published to the jury. The extortion began with a visit to McLawhorn's place of business by a man traveling in a Dodge Charger. Defendant's ex-girlfriend, with whom he still resided, testified that she drove Defendant to a fencing company in her Dodge Charger. Defendant appeared with another man one evening at a restaurant at which McLawhorn was eating and with two other men at the arranged location to receive the extorted money from McLawhorn. When arrested, Defendant was in possession

of a cell phone with a floral cover that had been loaned to him for the week by his ex-girlfriend's daughter. The cell phone had a "Text Now" app that could spoof a phone number, and the number generated by the app was the number from which McLawhorn received numerous text messages and calls in furtherance of the extortion scheme. McLawhorn identified some of the text messages on his cell phone as messages that he had received from the spoofed number, including the screenshot of the alleged letter from Destiny's father:

> We know without a doubt that you was involved with my daughter and her friend Destiny and Brooke. We have incriminating evidence in relation to you, . . . McLawhorn. You have two options: one, disregard this information and watch your life crumble; or, two, figure out what your reputation and freedom is worth and pay the cost. If you don't reach out and handle this immediately we will report you to the authorities . . . and every family member of yours, all the media starting with your daughter. By the way, these girls are underage. Be dumb and you will be a sex offender, child molester for life. We have messages, recordings, videos, pics, and everything else. Talk to you soon, Destiny's father.

Moreover, the cell phone's call log indicated numerous calls to McLawhorn's cell phone number. Defendant admitted to a law enforcement officer that he was aware of the extortion letter, text messages, and calls.

Thus, viewed in the light most favorable to the State, there is sufficient evidence "tending to prove the fact in issue"—that Defendant committed the crime of extortion on a theory of acting in concert—and, as such, the trial court did not err by denying Defendant's motion to dismiss this charge. *State v. Chisholm*, 288 N.C. App.

601, 610, 886 S.E.2d 908, 916 (citation omitted), *disc. review denied*, 385 N.C. 317, 891 S.E.2d 269 (2023).

**C. Conspiracy to Commit Extortion**

Defendant also argues that the trial court erred by denying the motion to dismiss the conspiracy charge "because the State failed to present sufficient evidence that [he] conspired with another to commit extortion" where Defendant merely had a "passive cognizance of [the] plan to extort McLawhorn."

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Winkler*, 368 N.C. 572, 575, 780 S.E.2d 824, 826–27 (2015) (citation omitted).

"This evidence may be circumstantial or inferred from the defendant's behavior." *State v. Shelly*, 176 N.C. App. 575, 586, 627 S.E.2d 287, 296 (2006). "Because the presence of a common design is often extremely difficult to detect, a conspiracy may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, . . . point unerringly to the existence of a conspiracy." *State v. Aleem*, 49 N.C. App. 359, 363, 271 S.E.2d 575, 578 (1980) (extraneity removed).

"The crime of conspiracy does not require an overt act for its completion; the agreement itself is the crime." *Shelly*, 176 N.C. App. at 586, 627 S.E.2d at 296.

In the present case, to convict Defendant of conspiracy to commit extortion, the State was required to prove that Defendant entered into an agreement with another to communicate a threat to a third party with the intention of wrongfully obtaining something of value. *See Privette*, 218 N.C. App. at 478, 721 S.E.2d at 313; *see also* N.C. Gen. Stat. § 14-118.4. The evidence described above, when taken collectively, "tend[ed] to show a mutual, implied understanding" rather than Defendant's mere passive cognizance of another's plan to extort money. *Shelly*, 176 N.C. App. at 586, 627 S.E.2d at 296 (citation omitted). In fact, the evidence shows Defendant's active participation in the scheme. Thus, the State presented substantial evidence from which the jury could reasonably infer that Defendant conspired with another to commit the crime of extortion.

Accordingly, when viewed in the light most favorable to the State, this evidence is sufficient to support a finding that Defendant committed the crime of conspiracy to commit extortion. *Privette*, 218 N.C. App. at 478, 721 S.E.2d at 313; *see also Sharpe*, 289 N.C. App. at 87, 887 S.E.2d at 119. The trial court properly denied Defendant's motion to dismiss this charge.

**D. Habitual-Felon Status**

Finally, Defendant maintains that because "[t]his Court should reverse the denial of the motion to dismiss and vacate [his] convictions" of extortion and conspiracy to commit extortion, we "should also vacate [his] habitual[-]felon status" conviction. In that we conclude that the trial court did not err by denying Defendant's

motion to dismiss, we will not vacate his conviction for attaining habitual-felon status.

**III. Conclusion**

For the foregoing reasons, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Chief Judge DILLON and Judge HAMPSON concur.

Report per Rule 30(e).